THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ANTONIO BUSCAGLIA, ET AL., Defendants and Appellants.

No. 7328. Argued April 19, 1939.—Decided May 31, 1939.

896

Rafael Buscaglia for appellants. R. A. Gómez, Prosecuting Attorney, and Luis Janer, Assistant Prosecuting Attorney, for The People, appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

In accordance with the facts set up in the opinion of the judge which was made to form part of the judgment, the District Court of Ponce found the co-defendants Antonio Buscaglia, Guillermo Hernández, Alejandro Medina, and Candita Collazo guilty of the crime of the violation of Section 11 of Act No. 67 of 1934 (Session Laws, 458), as amended with respect to its title by Act No. 66 approved on the 9th of May 1936 (Session Laws, 342). The defendants in the order named were sentenced to jail at hard labor for 10 years, 8 years, 8 years, and 4 years.

The information reads as follows:

"The prosecuting attorney files this information charging Antonio Buscaglia, Alejandro Medina Rodríguez, Guillermo Hernández, Ramón Morales, Candita Collazo and Virgilio Torres, with violation of Section 11 of Act No. 67 to regulate the manufacture, use, possession, storage, transportation, sale or gift of explosives in Puerto Rico, defining offenses, prescribing penalties, declaring an emergency and for other purposes, approved May 13, 1934, as amended in its title by Act No. 66, approved May 9, 1936, which offense consisted in that on or about the night of July 5 and dawn of July 6, 1937, in Ponce, P. R., there and then, unlawfully and wilfully and with the intent to damage or destroy the residence of Rev. Father Néstor J. Aguilera, or to terrorize or frighten the people dwelling therein and their neighbors, prepared a bomb containing gunpowder and other ingredients of an explosive nature as well as other objects liable to cause serious injury, which contrivance was wrapped up in a flag of the United States of America, and there and then caused the same to explode in the said house of Rev. Father Néstor J. Aguilera,

greatly damaging the same, also destroying part of the main entrance, making a hole in the cement floor, twisting part of the balcony's railing and besides breaking to pieces the furniture in the parlor of the said building, damaging its library, the said defendants having caused the said contrivance to explode very close to the bedrooms where the Rev. Father Néstor J. Aguilera and those residing with him in the said property were sleeping that night.

"The explosion of the said contrivance, which occurred in the manner and at the time stated, caused the consequent alarm, fright, sudden fear and terror to the neighbors of Father Aguilera as well as to the people of the city of Ponce."

Neither of the parties in their respective briefs has summarized the evidential facts of the trial, but the Fiscal relies on the statement thereof presented in the opinion of Judge Todd.

The court found that certain facts had been proved beyond a reasonable doubt. We shall resume what we consider the essential parts, namely, that on or about the 28th of February 1937, a meeting of the Nationalist Party was held whereat, among other agreements, one was approved which declared the Reverend Father Néstor J. Aguilera persona non grata to the independence for Puerto Rico; that Father Aguilera, a Catholic priest, had and has his residence in the wards of Clausells and Armstrong in Ponce, being also chaplain of Regiment 296 of the National Guard; that on the 4th of July 1937, said Father went to San Juan to participate, as a member of the National Guard, in the celebration of that holiday which took place on the 5th and he returned to Ponce on the night of that day; that while he was asleep, more or less at half past one in the morning of July 6th, he was awakened by an explosion which he at the time thought was the gunfire of the Castle of Morro, inasmuch as the night before he had slept in the barracks of Ballajá, at San Juan; but that upon being called by another priest who was with him, he realized that it was something else because the explosion was very violent; that the effects that it produced

on the house, among others, were as described, thereupon setting forth the rather numerous things that were destroyed or injured by the explosion; that when Father Aguilera got up he smelt the powder, there was smoke in the house and a general alarm arose in the neighborhood amid great excitement among the people who then gathered in front of the house; that at the time of the explosion a flying object passed the walls in front and back leaving a hole of six inches in the house located across from Father Aguilera's; that the explosion was heard at a distance of one kilometer; that Father Aguilera knew the defendant Alejandro Medina since 1930, inasmuch as the latter had assisted him as altar boy for four years.

It was proved further, the judge went on to recite, and this beyond a reasonable doubt, that in the house of Antonio Buscaglia, somewhat previous to the 5th of July 1937, a number of Nationalists gathered, among whom were the defendants, Antonio Buscaglia, Guillermo Hernández, Alejandro Medina, Ramón Morales and Candita Collazo, at which meeting plans of a terrorist character were formed in order to frighten the neighborhood, cause damages and obtain money from the rich; that it was one of the ways of carrying into effect such plans to use explosive bombs; especially in one of these meetings, at the suggestion of the defendant Antonio Buscaglia, they plotted to explode bombs in the residence of Father Aguilera and Pedro J. Rosaly of Ponce; that the person who presided over these meetings was the defendant Antonio Buscaglia; that anybody guilty of an indiscretion was to be punished by touching him on the arm with a drop of sulphuric acid, and even on said Buscaglia the punishment was to be inflicted; that to carry out the plot, the defendants prepared and manufactured an explosive bomb by means of a tin can and of various described materials some of which had to be strained through a sieve; that the said bomb was put together in the house of Virgilio Torres and Candita Co-

llazo; that the bomb was placed in the house of Father Aguilera on the eve of the 4th of July by defendant Guillermo Hernández while certain other defendants watched in front of the house; that that particular bomb was extinguished and did not take effect; that the said bomb was reformed and reinforced by some of the defendants and Santos Rodríguez on the 5th of July; that the bomb was wrapped up in the American flag that belonged to Antonio Buscaglia and some remnants of the flag were found about the residence of Father Aguilera. Then the court proceeded to enumerate the efforts made by the police to show the origin of the various components of the bomb including the sieve that was found in the house of Candita Collazo; that when the authorities came to the house of Candita Collazo, where the sieve had been kept she said she did not know where it was and it was finally found in the toilet of that house. According to the court it was also proved beyond all reasonable doubt that remnants of the material, or material identical to the ones used in the formation and manufacture of the bomb, were found in the houses of defendants Antonio Buscaglia and Candita Collazo. The court then discussed a number of other details connected with the formation of the bomb and also the expert evidence tending to show the manner of its formation; likewise and especially the presence of gunpowder. Then the court came to the final conclusion that the bomb (*artefacto*) prepared by the defendants was the one that exploided at the house of Father Aguilera.

The defendants presented no evidence in the District Court of Ponce, and, so far as the proof as a whole is concerned, relied on a motion for nonsuit. The overruling of the motion for nonsuit is made the subject of the 25th assignment of error. The 25th error as such is not discussed in the brief of the appellants. The Fiscal was perfectly justified in giving the said assignment of error no particular attention. In this regard the Fiscal says that of the 25 errors

only 12 have been discussed which were the ones which should be refuted in his brief. What the appellants attempted to do after the hearing in this court was to have a note placed after the 25th assignment of error to the effect that page 509 of the transcript of the evidence should be looked at. We find nothing on page 509 or any page thereafter that would throw any light on the motion for nonsuit. There was a reference on page 503 *et seq.* In what may be called their statement of the case the appellants referred to the motion for nonsuit. There is no real discussion of the facts therein except in effect to say that there was a variance between the information and the proof. As there was no assignment of error on this specific point the Fiscal necessarily does not discuss it and we find no variance. What the appellants say is more or less a repetition of the idea that the evidence tended to prove a crime under Section 516 of the Penal Code and not under Section 11 of the Act of 1934.

Indeed if there was no variance and the facts tended to support the complaint, the motion for nonsuit was well overruled. In this regard at the end of his brief the Fiscal says that with respect to all the evidence presented, it was sufficient to read the statement of the witness Santos Rodríguez in order to arrive at the conclusion that this statement alone was sufficient to support the judgment, inasmuch as his testimony covers in detail the whole story, both subjectively and objectively; that he described the intervention and participation of all the defendants from beginning to the end, other evidence being directed to corroborate his testimony in very many particulars.

The first assignment of error related to the overruling by the court of a motion for a change of venue. We shall consider this assignment at the end of our opinion.

■■ The second assignment of error is:

"The court committed error in denying to the defendants the right to a jury trial and separately."

The appellants attempt to say first that their alleged offense was covered by Section 516 of the Penal Code. The second ground apparently, as we understand it, is that Section 15 of Act No. 67 of 1934 attempts to provide a special proceeding for the trial of cases including in its terms a proceeding which would deprive the defendants of the right of a trial by jury. The third ground was that the promulgation of the Penal Code and the Code of Criminal Procedure in 1937 and 1935, respectively, did away with the previous Act of 1934 as amended in 1936.

It is evident that the assignment of error is totally deficient in making its understanding depend upon the three separate propositions enunciated thereafter and furthermore the reading of the said assignment gives very little idea of what is the attempted exoneration of the defendants. The court below decided the questions involved when they were originally presented by a motion, by holding that while Section 516 of the Penal Code required that the crime should be committed maliciously, Section 11 of 1934 did not require malice. Section 516 of the Penal Code and Section 11 of the Act of 1934 read as follows:

Section 516. Every person who maliciously by the explosion of gunpowder or other explosive substance, destroys, throws down, or injures the whole or any part of any building, by means of which the life or safety of a human being is endangered, is guilty of felony.

"Section 11. Any person unlawfully using dynamite or other explosive for the purpose of inflicting bodily injury upon, or to terrify and frighten any person, or to injure or destroy any property, or to damage the same in any manner, shall be liable, upon conviction, to pay a fine of not less than two hundred fifty (250) dollars, nor more than five thousand (5,000) dollars, or to imprisonment at hard labor for a term of not less than one (1) year and not to exceed twenty (20) years."

The court proceeds to hold that the crimes are distinct and even questions whether the word "wilfully" means anything more than deliberately.

However, it seems to us that the best answer to this class of argument is that the Legislature has a right to set up crimes, having similar elements, but yet perhaps different as here. Section 11 of the Act of 1934 made it possible to convict defendants without evidence of a felony. The defendants might have been guilty of a greater crime without preventing their being prosecuted for the lesser offense.

We are quite agreed with the Fiscal that there is no question of the right of jury involved especially as the Legislature might easily have done away with the jury trial even for felonies.

It is a general principle of law that the promulgation of a code covering the fundamental penal laws does not do away with certain special laws as the one under consideration. In other words, the Legislature may and did in 1934 pass a special act to cover the possession of explosive material and it was not necessary for the codifiers to include this special act in the new Penal Code. The Legislature has shown no tendency to repeal this Act and repeals by implication are not favored. This second assignment of error is more amply discussed in the brief of the Fiscal with appropriate citations.

The third and fourth assignments of error will be discussed together. They read as follows:

"3.—The court below erred in permitting two charges to be brought against the defendants depending on the same facts and setting up two distinct and irreconcilable tendencies, the prosecution for the lesser offense being pressed forward while the other was held back with the evident purpose of keeping the defendants in jail during the prosecution of the minor offense.

"4.—The court below erred in holding that Section 11 of Act No. 67 of May 13, 1934, was constitutional."

The court held and we agree that the pendency of two different prosecutions is generally a matter for the Fiscal. The motion of the defendants was made apparently when both prosecutions were pending and the court thought that

the presentation of the motion involved in this case was premature for the time being, that is, before the trial. We have the idea, subject to correction, that the defendants might have been prosecuted both under Section 516 of the Penal Code and Section 11 of the Act of 1934 as amended in 1936. We likewise agree with the Fiscal that the title of an act does not need to describe its whole contents, but it is sufficient if the contents are identified.

The title of the Act in question as amended in 1936 is as follows:

"To regulate the manufacture, use, possession, storage, transportation, sale or gift of explosives in Puerto Rico, defining offenses, prescribing penalties, declaring an emergency, and for other purposes."

We hold that the title is broad enough to cover the matter set out in Section 11 to which we have already referred. The use of the word "explosives" makes the title sufficient.

The fifth assignment of error was as follows and we agree with the Fiscal that it is entirely frivolous:

"5.—The court below erred in holding that Act No. 67 of 1934 was amended by Act No. 66 of May 9, 1936."

The sixth, seventh and eighth errors are as follows:

"6.—The court below erred in denying a motion for a bill of particulars regarding some parts of the information and for striking out others, by its order of August 17, 1937.

"7.—The court below erred in overruling the demurrer to the information on the ground that it charged more than one offense.

"8.—The court below erred in overruling the demurrer to the information because the same failed to comply with Sections 71 and 72 and paragraphs 6 and 7 of Section 82 of the Code of Criminal Procedure."

We have read the briefs of both parties and we find no error, or if any error there was, it was harmless.

The ninth and tenth assignments read as follows:

"9.—The court below erred in holding that at a convention of the Nationalist Party held in Ponce on February 28, 1937, a resolution, among others, was voted declaring the Rev. Father Néstor J. Aguilera to be *persona non grata* as being hostile to the independence of Puerto Rico.

"10.—The court below erred in allowing the Rev. Father Néstor J. Aguilera to testify in general terms regarding the contents of an article which he stated to have published on February 20, 1937, in the newspaper 'El Mundo'."

The appellants themselves admit that the motive of the crime is not an essential to a conviction. They maintain, however, that when in a case of circumstantial evidence, as here, the judge makes comments on the motive, the alleged insufficient proof is relevant, but as the Fiscal points out in a way that we have accepted, there was evidence tending to show the motive of the crime.

The eleventh and twelfth assignments of error set up:

"11.—The court below erred in allowing Pedro Guillermo Teissoniere to testify as an expert on gunpowder, its different kinds, their classification and identification, their effects and traces, as well as on dynamite and bombs, the witness having failed to qualify as an expert in order to testify in regard to such substances.

"12.—The court below erred in refusing to strike out the testimony of Luis Fortuño Janeiro because the statements of said witness, although referring to one of the defendants, was fully immaterial regarding the facts to be shown as charged in the information and tending simply to prejudice the mind of the trial judge against the defendants."

We agree with the Fiscal that witness Teissoniere was a sufficient expert to testify to this simply constructed "artefacto" that the defendants used. Teissoniere was an expert in pyrotechnics and no more, but necessarily knew about gunpowder and other explosive material, and his knowledge was more than sufficient to cover the use of the materials in the bomb that actually was exploded. With respect to the state-

ments of the witness Fortuño Janeiro and his reference to the fact that the bomb was wrapped in the American flag, etc., we think that those statements could not seriously affect the mind of a serene judge as we think Judge Todd was.

The 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 22d, 23d, 24th, and 25th assignments of error are not discussed in the brief of the appellants and it is unnecessary for us to discuss them, unless we were convinced that there was a fundamental error. We find no such fundamental error.

■ One of the most serious complaints running through the brief of the appellants is that there was an information under Section 11 supra and at the same time an information under Section 516 of the Penal Code: that by reason of the latter the defendants were put under bonds of twenty thousand or twenty-five thousand dollars each, as the case may be; that the bond fixed in the misdemeanor was $500 which the defendants might easily have furnished; that this was done by the governmental officers to keep the defendants in jail while the misdemeanor was being tried. They say that the prosecution under Section 516 was dismissed after the conviction in this case. We feel bound to acquit the governmental officers of any wrongdoing because it is apparent that at one time they may have hoped to collect enough evidence to convince a jury of the guilt of the defendants and afterwards lost hope, and then they may have decided that they would dismiss the prosecution under Section 516 of the Penal Code.

■■ The first assignment of error was as follows:

"The court below committed error in overruling the motion for a change of venue presented on the 9th of August, 1937."

The assignment is insufficient. Any assignment of error of this nature or of a similar nature ought to have in its body, we may say, some indication of the reasons why it was error for the court to overrule the motion for a change of venue. For example, the appellants might have said that the

court below committed error in overruling the motion for a change of venue, presented on the 9th of August, 1937, which had for its ground that the prejudice or partiality of the judge prevented him from trying the case as becomes a magistrate. Perhaps this much would have been enough, but to aid this court it would have been still better if the appellants had said this hostility was shown in fixing an undue bond, in directing the prosecution, in evidence of hostility to the lawyers and in other matters.

The Fiscal of this court shows or attempts to show that a motion for a change of venue as such is limited to prejudice in the community, by which a fair jury can not be obtained and not for an attack on the judge. Secondly, the Fiscal shows that an attack on the judge should be for reasons other than those expressed in the preceding paragraph, namely, perhaps among other things, that he should have a personal bias against the prisoners.

The appellants say something to the effect that the affidavits filed by them to which there were no counter-affidavits, should be taken as true. We are not convinced that an affidavit plays the same role as the complaint so that its facts are admitted. The affidavit is somewhat different from a pleading. In any event, a judge is not bound to accept facts that relate to him or his conduct as presumptively true. It is unimportant whether the judge apparently refuses to salute some of the lawyers in the case. It might have been a fleeting emotion or a piece of absent mindedness and there is no sign in the record that this attitude prevailed. As to his saying that the crime was worse than a murder in the first degree, if he did say it, it may be assumed that it was just a matter of opinion which might easily be shared by others. The acts of the defendants steadily carried out might involve not only a single life but several or a great number.

██ One of the matters, if not the principal matter, that was stressed was the fixing of bonds for two of the defendants

at $25,000 which was subsequently reduced by the writer acting in the name of the Court to $10,000. We quite agree that the fixing of a high bond might have been one of the elements to show prejudice in the judge, but standing alone this act is not sufficient. One of the main objects for fixing a high bond is to secure the presence of defendants at the trial.

 The most serious matter was the charge that Judge Todd was active in the prosecution of the defendants, having been at various times closeted with the Fiscal or chief of police and that the general impression of the community was that Judge Todd was the leading spirit in the prosecution. In the ordinary case it is advisable that a judge should avoid giving the appearance of taking an undue interest in a prosecution. We wish to say, however, that if notwithstanding the defects of the assignment of error we were convinced that the judge acted improperly and that as a result thereof the defendants did not have a fair trial, we would reverse the judgment. The complaint of the appellants, however, both in their original motion and in their argument before this court, does not satisfy us that Judge Todd took too much interest in the case. The examination we have made of the record does not satisfy us that he did anything in the search for evidence or in the production of it or that he really trespassed upon the duties of the Fiscal. Nor does the record satisfy us that the judge had anything to do with the prosecution directed against these particular defendants. Giving color, however, to the theory of the appellants that some of the acts of the judge tended to show partiality and prejudice, this, as we shall see, would be obviated by other behavior of the judge. The general fairness of Judge Todd in the trial of cases was testified to by counsel of the appellants in at least one of the affidavits. A judge might even show a certain amount of zeal in seeing that a case is prosecuted and not thereby be chargeable with prejudice or undue motive.

As a mild matter to tend to show the attitude of the judge, reference may be had to the following. The explosion of the missile that partly wrecked the house of Father Aguilera was or became a familiar fact to the public of Ponce and ordinarily anyone would speak of it as a bomb. Each time, however, a witness referred to a "bomb", the defendants objected and the judge sustained their objection. In reality we have the idea that "bomb" was the current word to use; that if it was not, the knowledge of the witness could have been brought out on cross-examination and that if the objection had been overruled it would have been harmless error.

■ We find in the conduct of the trial no sign of passion or prejudice. Even if a judge should erroneously and somewhat hostilely discuss a point of law with counsel, such a manifestation would not show prejudice.

The best answer to the assignment of error, as again suggested by the Fiscal, is the inspection of the whole record in this case, especially the trial. This was a pragmatic or practical test of fairness and the judge met it, we think, fully.

The judgment should be affirmed.